IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| TIMMY RAY LOVELACE | ) | |
| | ) | Case No: 2:10-CV-109 |
| v. | ) | MATTICE/CARTER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
|     Commissioner of Social Security | ) | |

## REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion for Summary Judgment (Doc. 8) and defendant's Motion for Summary Judgment (Doc. 12).

For reasons that follow, I RECOMMEND the decision of the Commissioner be AFFIRMED.

### Plaintiff's Age, Education, and Past Work Experience

Plaintiff has a high-school education and was thirty-five years old at the time of the ALJ's September 2008 decision (Tr. 17). The plaintiff has past relevant work as a cook (Tr. 18).

### Applications for Benefits

Plaintiff applied for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on February 6, 2007, alleging disability since December 31,

2005, due to degenerative disc disease in his lower back; a spinal-cord and right-knee injury; an inability to concentrate, remember, or deal with others; anger management issues; and depression (Tr. 10, 69-79, 119). After his applications were denied initially and upon reconsideration, Plaintiff requested an administrative hearing (Tr. 43-56). The administrative law judge (ALJ) held a hearing on August 6, 2008, at which Plaintiff appeared (with counsel) and testified (Tr. 21-33). In a decision dated September 23, 2008, the ALJ found that Plaintiff was not disabled because he could perform a significant number of jobs despite the limitations caused by his impairments (Tr. 10-20). On March 26, 2010, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review (Tr. 1-6). Under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

## **Standard of Review - Findings of the ALJ**

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §423(d)(1)(A). The burden of proof in a claim for Social Security benefits is upon the claimant to show disability. *Barnes v. Secretary, Health and Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once, however, the plaintiff makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience.

*Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The Court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner*, 745 F.2d at 388 (citation omitted). The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After consideration of the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.

2. The claimant has not engaged in substantial gainful activity since December 31, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq*, 416.920(b) and 416.971 *et seq*.).

3. The claimant has the following severe impairments: chronic back pain, an anxiety disorder, a personality disorder and polysubstance abuse in partial remission (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity for simply, repetitive routine medium work that requires only occasional work with the public, supervisors and co-workers.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on xxxxxxx xx, 1972 and was 33 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-19).

## Issues Presented

Plaintiff raises the following issues: (1) whether the ALJ erred in failing to accord proper weight to the opinions of plaintiff's treating physician and (2) whether the ALJ's RFC determination is supported by substantial evidence.

## Relevant Facts

**A.      Medical Evidence**

Plaintiff alleged onset of disability as of December 31, 2005 (Tr. 10, 69, 77). He did not seek treatment for back pain until January 2007, when he presented to the emergency room (Tr. 165-68). In February 2007, Plaintiff presented to Kingsport Medical Center, as a new patient, with complaints of back pain over approximately a 10 year period (Tr. 176-80). He denied paresthesia or pain radiating into his legs; he stated the pain was worse with bending, lifting, or sitting for long periods, and was better with lying down. With the exception of the January 2007 emergency room visit, during which no x-rays were taken, Plaintiff denied prior treatment. He reported that Ultram and Lortab had temporarily relieved his pain in the past. (Tr. 176). On examination, Plaintiff had some lumbar tenderness, but an otherwise normal examination, including a negative straight-leg-raising test, normal range of motion, normal reflexes, and intact sensation (Tr. 174). X-rays of Plaintiff's low back showed evidence of osteoarthritic changes (in the mid-back area), but no evidence of acute injury, bone changes, or slippage, and the intervertebral spaces were preserved with the exception of some narrowing at the L5-S1 level (Tr. 178). Plaintiff was diagnosed with chronic back pain (Tr. 174).

In March 2007, Plaintiff returned to the emergency room with complaints of back pain (Tr. 182).

In April 2007, Dr. Kanika Chaudhuri, a DDS Medical Consultant, reviewed the medical evidence and opined that Plaintiff's physical impairments were not severe, either singly or in combination. In reaching this conclusion he noted Plaintiff's range of motion on 1/12/07 was within normal limits, no peripheral edema or cyanosis, negative straight leg raising with tenderness over the L4/L5 area. X-Ray of spine showed no evidence of acute injury or slippage, intervertebral spaces were preserved with exception of some narrowing at the L5-S1 level. Evidence of osteoarthritic changes involving lower thoracic vertebra which were included in the study; no acute bone change was found. (Tr. 183, 186).

In July 2007, Plaintiff began treatment with Dr. John Tasker for complaints of continued back pain, and right-hand aching and numbness (Tr. 216). Dr. Tasker's treatment notes are largely illegible, but it appears that he diagnosed Plaintiff with major depression and low-back pain, along with other conditions including insomnia, blood pressure problems and GERD (Tr. 227-229). Plaintiff returned to see Dr. Tasker in August 2007, but Dr. Tasker's treatment notes are not legible for this visit (Tr. 242).

In November 2007, Dr. Christopher Fletcher, a DDS Medical Consultant, reviewed the medical records and opined that Plaintiff had no severe physical impairments (Tr. 248-251).

The record indicates no further treatment for back pain until May 2008, when Plaintiff presented to the emergency room after falling through the floor of a rotted wooden deck at his home, scraping his right knee and landing on his back. He reported neck, low back, and knee pain and chronic prior back pain. (Tr. 305). Plaintiff had vertebral point tenderness in his back

6

and decreased range of motion in his right knee, but his examination was otherwise essentially normal, which included negative straight-leg-raising tests (Tr. 306). X-rays of Plaintiff's low back and knees were normal, and x-rays of his neck showed mild degenerative changes (particularly involving the anterior aspect of the C5-6 disc space) (Tr. 307). Plaintiff was diagnosed with acute myofascial lumbar strain and knee pain (Tr. 306).

Later in May 2008, Plaintiff returned to the emergency room with complaints of swelling in his left thigh as the result of a fall. Examination was essentially normal and Plaintiff was found to have a contusion and some bruising. The severity was described as moderate. (Tr. 302, 303).

In July 2008, in a Physical Residual Functional Capacity Questionnaire, Dr. Tasker noted Plaintiff's diagnoses included depression, an inguinal hernia, and lumbago with radiculopathy (other diagnoses are illegible). He noted Plaintiff's pain improved with medication, from 10/10 to 5-6/10. The medication caused no side-effects. His impairments could be expected to last at least twelve months (Tr. 316). Dr. Tasker opined Plaintiff was not a malingerer, could lift and carry up to ten pounds rarely; sit, and stand and/or walk for less than two hours each in an eight-hour work day; frequently look down (sustained flexion of neck), turn his head to the right or left, look up, and hold his head in a static position; and never twist, stoop (bend), crouch/squat, climb ladders, or climb stairs. Dr. Tasker stated Plaintiff would not need to shift positions at will from sitting, standing, or walking, and did not require elevation of his legs with prolonged sitting. Dr. Tasker further stated Plaintiff did not require an assistive device to aid in ambulation. He opined Plaintiff would have difficulty with reaching, but no limitations in handling or fingering (Tr. 317-319). Dr. Tasker opined that during a typical work day, Plaintiff

7

would constantly experience pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks (Tr. 317).

**B.     Mental Health Evidence**

In February 2007, on referral by his attorney, Plaintiff was seen at Frontier Health (Tr. 170-72). He denied a history of suicide/homicide or psychosis, described a history of cannabis abuse since age 10, and reported he had not received mental-health treatment since 1997 (for depression related to the breakdown in relationship with a past girlfriend). He reported being arrested for domestic violence and possession of cannabis (Tr. 170). Plaintiff was diagnosed with an adjustment disorder with depression, cannabis dependence, a personality disorder, and a rule-out diagnosis of depressive disorder, and assigned a Global Assessment of Functioning (GAF) score of 59 (Tr. 171), indicating that he was experiencing no more than moderate symptoms or difficulty in any mental function.[1]

In May 2007, Plaintiff underwent a consultative psychological evaluation by Dr. Steven Lawhon (Tr. 190-93). Plaintiff reported that he was seeing a counselor at a local mental-health center, but he was not taking any medications for his alleged mental problems (Tr. 190). He reported being sexually molested by a neighbor and babysitter as a child, and having flashbacks of this experience. Although Plaintiff admitted suicidal ideation, he denied any current plan or

---

[1] The GAF scale reflects a "clinician's judgment" of the individual's symptom severity or level of functioning. American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders, 32-33 (4th ed., Text Rev. 2000) (DSM-IV-TR). The higher the number, the higher the level of functioning. Id. A GAF score of 71-80 reflects "no more than slight impairment." Id. at 34. A GAF score of 61-70 reflects "some mild symptoms" or "some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well." Id. A GAF score of 51-60 reflects "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." Id. (Doc. 13, Defendant's Memorandum, p. 5)

intention (Tr. 191). Plaintiff reported that he lived with his mother, went to the grocery store with others, seldom swept or cleaned, occasionally did laundry, and watched television. He had friends and could relate to others, but said he seldom saw his friends. (Tr. 192).

Dr. Lawhon noted Plaintiff appeared to be mildly to moderately anxious and depressed, as evidenced by his affect, mood, and self-report. He also noted Plaintiff had a history of polysubstance abuse, mainly marijuana and cocaine, which appeared to be in partial remission. He estimated Plaintiff's intellectual functioning to be in the average range. Plaintiff was fully oriented, displayed no evidence of a thought disorder, and experienced no hallucinations or delusions. (Tr. 191). Dr. Lawhon diagnosed post traumatic stress disorder, polysubstance abuse in partial remission, and a personality disorder (not otherwise specified), and assigned a GAF score of 58 (Tr. 192), indicating no more than moderate impairments in social and occupational functioning. DSM-IV-TR at 34. Dr. Lawhon opined that Plaintiff was moderately limited in his ability to sustain concentration and mildly to moderately limited in his ability to adapt, but was not significantly limited in his ability to understand and remember, and socially interact (Tr. 192-93). He recommended treatment for depression and to prevent substance abuse relapse (Tr. 193).

In June 2007, Dr. Rebecca Joslin reviewed the mental health evidence and opined Plaintiff had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation (Tr. 204, 206). She opined Plaintiff could not interact appropriately with the general public, but could understand and remember simple and detailed instructions; maintain attention, concentration, persistence, and pace; and adapt to changes (with some difficulty) (Tr. 210).

9

In November 2007, Dr. George Davis, a psychologist, reviewed the mental health evidence and opined Plaintiff had moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning and concentration, persistence, or pace; and no episodes of decompensation (Tr. 262). Dr. Davis opined that Plaintiff could understand and remember simple and detailed tasks; could concentrate and attend to simple and detailed tasks, despite some difficulty; could interact with coworkers, supervisors, and the general public without significant limitations; and could adapt to work-like settings and changes with some, but not substantial, difficulty (Tr. 268).

In July 2008, Dr. Tasker opined, in a Medical Assessment of Ability to do Work-Related Activities (Mental), that Plaintiff had good ability to follow work rules; function independently; maintain attention and concentration; and understand, remember, and carry out detailed and simple job instructions, and had very good ability to maintain personal appearance. Dr. Tasker further opined Plaintiff had fair limitations in his ability to use judgment with the public; interact with supervisors; and understand, remember, and carry out complex job instructions; behave in an emotionally stable manner; and relate predictably in social situations, but he assessed a poor ability or no ability to relate to co-workers; deal with the public; deal with work stresses; or demonstrate reliability (Tr. 311-12). Dr. Tasker opined that Plaintiff had a severe impairment independent of any substance abuse (Tr. 313).

## Analysis

In his appeal, Plaintiff raises two issues: (1) whether the ALJ erred in failing to accord proper weight to the opinions of plaintiff's treating physician and (2) whether the ALJ's RFC determination is supported by substantial evidence. He points to the July 30, 2008 opinion of Dr.

Tasker that Plaintiff had no useful ability (poor/none) to relate to coworkers, deal with public, deal with work stresses, or demonstrate reliability. Plaintiff also points to the chronic major depression with panic attacks and severe mental impairment independent of any substance abuse. Plaintiff notes there was no consultative physical examination and no opinion by any other physician who actually conducted an examination in the record (Doc 9, Plaintiff's Brief at 8-10). Plaintiff next argues the RFC assessment was not supported by substantial evidence because limitations assessed by a reviewing state agency psychologist were not included in his RFC conclusion and the ALJ failed to provide reasons for rejecting conclusions of the state agency psychologist.

For reasons that follow, I conclude there was a valid, articulated basis in the ALJ's Decision for rejecting the opinion of the treating physician and substantial evidence does support the RFC assessment in this case.

A treating source's medical opinion is entitled to controlling weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2), quoted in Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 877 (6th Cir. 2007). If the ALJ does not give controlling weight to a treating physician's medical opinion, the ALJ should apply the factors listed in 20 C.F.R. § 404.1527(d)(2)-(6) to determine how much weight to give the opinion, and provide "good reasons" for the weight given to the opinion. 20 C.F.R. § 404.1527(d)(2); see also Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 477 (6th Cir. 2003) ("If the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for h[is] rejection.").

The ALJ set forth his reasons for declining to give Dr. Takser, the treating physician, significant weight and provides an analysis of his mental limitations as follows:

> In making this finding, the undersigned has considered all opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. In relation to physical impairments, the undersigned has considered the objective medical findings of the attending emergency room physicians, Dr. Tasker and the primary care providers at Kingsport Medical Center in finding that the claimant can perform medium work. Although Dr. Tasker opined that the claimant was limited to less than sedentary work, this opinion is not consistent with his own medical findings on examination, nor is it consistent with the overall medical evidence of record. Examinations have shown only minimal findings and are certainly not consistent with an individual who is limited to less than sedentary work. Therefore, Dr. Tasker's opinion is given little weight. Although the state-agency medical consultants opined that the claimant had no severe physical impairments, the undersigned has given the claimant every benefit of doubt in considering his allegations of pain. In relation to mental impairments, the undersigned has considered the objective medical findings of the claimant's counselors at Frontier Health, Dr. Lawhon and Dr. Tasker in finding that the claimant can perform simple, repetitive routine work that requires only occasional work with the public, supervisors and co-workers. Although Dr. Lawhon opined that the claimant had no limitations in the ability to understand and remember and socially interact, again, the undersigned has given the claimant every benefit of the doubt in finding that the claimant can perform only simple, repetitive routine work that requires only occasional work with the public, supervisors and co-workers. This finding is consistent with the overall medical evidence of record. The undersigned has also considered the opinion of Dr. Tasker. However, Dr. Tasker is not a physician who specializes in mental health treatment and is not qualified to treat the claimant in that capacity. His opinion is based mainly on subjective complaints and not objective findings. Therefore, Dr. Tasker's opinion is given no weight as it pertains to a mental impairment. The undersigned has also considered the opinion of the state-agency medical consultants, which is generally consistent with the above-stated residual functional capacity, with the exception of moderate restriction of activities of daily living, which is not demonstrated by the overall medical evidence of record.
>
> . . .
>
> Although the undersigned recognizes that the claimant has some pain and limitations as the result of back pain, the record fails to demonstrate an impairment of the severity as to prevent all work activity. With the exception of some lumber tenderness, examinations have been essentially within normal limits,

with no evidence of abnormal straight-leg raising testing, sensory or reflex loss, limited range of motion or muscle weakness. The claimant is able to ambulate without difficulty and uses no assistive device. Radiological findings have also been minimal. Furthermore, the claimant has received minimal medical treatment for a back impairment, and takes no medications for same. He has never been evaluated by an orthopedist and has never been hospitalized for back-related problems. Therefore, following a thorough review of the documentary evidence, the undersigned finds that the record fails to prove that the claimant has physical impairments of the severity as to preclude medium work.

The undersigned further recognizes that the claimant has some limitations as the result of mental impairments. However, the record fails to indicate that they are of the severity as to preclude all work activity. The claimant has received minimal mental health treatment. His main treatment has been from his primary care provider in the form of medication. The claimant did see a counselor at the mental health center in February 2007. However, this was on referral by his attorney, and not a recommendation from a primary care provider, or by result of the claimant's own actions.

Further diminishing the claimant's credibility is his long history of substance abuse. The claimant admitted to a past history of marijuana and crack cocaine, stating that he had smoked two joints of marijuana daily for over ten years. When seen at the mental health center, the claimant described a history of cannabis abuse since age 10. He reported prior arrests for domestic violence and possession of cannabis. It was noted that the claimant minimized his cannabis abuse and was seeking mental health services as a condition of a disability claim.

Tr. 16-18.

In this case, the ALJ declined to afford controlling or significant weight to Dr. Tasker's opinions because Dr. Tasker's opinions were "not consistent with his own medical findings on examination" (Tr. 16). See 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Plaintiff acknowledges that Dr. Tasker's notes are "largely illegible and appear to be incomplete" (Pl. Br. at 8). The legible portions of Dr. Tasker's treatment notes largely consisted of merely his diagnoses (which are only partially

legible) (Tr. 228, 242, 316). However, the mere diagnosis of an impairment connotes nothing about the severity of the condition. See Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988); Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Cohen v. Sec'y of HHS, 964 F.2d 524, 528 (6th Cir. 1992)) (ALJs are "not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.").

The ALJ also pointed out that Dr. Tasker's treatment notes showed "only minimal findings and [were] certainly not consistent with an individual who is limited to less than sedentary work" (Tr. 16). For instance, Dr. Tasker noted that Plaintiff's pain improved with medication, which caused no side-effects (Tr. 316). Because Dr. Tasker's opinions lacked sufficient support and was contradicted by the opinions of the non-examining State Agency Physicians, I conclude the ALJ had a reasonable basis for assigning them little weight.

Although the absence of reliable support for Dr. Tasker's opinions could be, by itself, a sufficient basis for the weight the ALJ gave them, the ALJ also explained that Dr. Tasker's opinions were not "consistent with the overall medical evidence of record" (Tr. 16). See 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). In February 2007, Plaintiff had some lumbar tenderness, but an otherwise normal examination including a negative straight-leg-raising test, normal range of motion, normal reflexes and intact sensation (Tr. 174). X-rays from that period showed some evidence of osteoarthritic changes in Plaintiff's mid-back area, but no evidence of acute injury, bone changes, or slippage, and the intervertebral spaces were preserved with the exception of some narrowing at the L5-S1 level (Tr. 178). In May 2008, after apparently receiving no treatment since August 2007 (Tr. 242), Plaintiff had vertebral point tenderness in his

back and decreased range of motion in his right knee, but his examination was otherwise essentially normal, which included negative straight-leg-raising tests (Tr. 306). X-rays from that period showed that Plaintiff's low back and knees were normal, and he had only mild degenerative changes in his neck (Tr. 307). A later examination in May 2008 rendered essentially normal results (Tr. 303).

The medical opinion evidence also supported the ALJ's decision to give little weight to Dr. Tasker, because Drs. Chaudhuri and Fletcher opined that Plaintiff's physical impairments were not severe (Tr. 183, 248). The Social Security regulations and rulings expressly recognize these consultants as "highly qualified physicians and psychologists who are also experts in Social Security disability evaluations." See 20 C.F.R. § 404.1527(f)(2)(i); Social Security Ruling (SSR) 96-6p. The ALJ was more accommodating than Drs. Chaudhuri and Fletcher by giving Plaintiff "every benefit of doubt in considering his allegations of pain" and limiting him to medium work (Tr. 16). Because Dr. Tasker's opinions lacked support and were inconsistent with other substantial evidence in the record, the ALJ did not rely on Dr. Tasker's opinions.

The ALJ also discounted Dr. Tasker's opinion regarding Plaintiff's mental limitations, because he was "not a physician who specializes in mental health treatment" (Tr. 17). See 20 C.F.R. § 404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

Plaintiff argues the ALJ's mental residual functional capacity finding was "further unsupported due to his failure to address the mental limitations noted by the reviewing state agency psychologists." (Doc. 9, Plaintiff's Brief at 12-14). However, the evidence Plaintiff cites

from the June and November 2007 state-agency-psychologist opinions does not constitute those psychologists' functional capacity assessments. Rather, the evidence Plaintiff cites (Tr. 208-09, 266-67) is from Section I of Form SSA-4734-F4-SUP, which "is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the [residual functional capacity] assessment." POMS DI 24510.060B4a. Drs. Joslin and Davis properly recorded their mental residual functional capacity opinions in Section III of Form SSA-4734-F4-SUP, the "Functional Capacity Assessment" section. See POMS DI 24510.060B2a ("Section III-Functional Capacity Assessment [of Form SSA-4734-F4-SUP], is for recording the mental RFC determination. It is in this section that the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings.").

The ALJ noted that his residual functional capacity finding was "generally consistent" with the opinions of Drs. Joslin and Davis (Tr. 17). Dr. Joslin opined Plaintiff could not interact appropriately with the general public, but could understand and remember simple and detailed instructions; maintain attention, concentration, persistence, and pace; and adapt to changes (with some difficulty) (Tr. 210), and Dr. Davis opined Plaintiff could understand and remember simple and detailed tasks; could concentrate and attend to simple and detailed tasks, despite some difficulty; could interact with coworkers, supervisors, and the general public without significant limitations; and could adapt to work-like settings and changes with some, but not substantial, difficulty (Tr. 268). The only discrepancy between these opinions and the ALJ's finding was Dr. Joslin's opinion that Plaintiff could not interact appropriately with the general public (Tr. 16,

16

210). However, the ALJ included the limitation of no public contact in his hypothetical question to the vocational expert (Tr. 30), which I conclude adequately accommodated this limitation.

Plaintiff argues Dr. Tasker was the only examining physician that provided a medical opinion, but rather than adopt his opinion or order a consultative physical exam, the ALJ formulated his own physical residual functional capacity (Doc. 9, Plaintiff's Brief at 10-11). Although an ALJ is required to consider medical source opinions along with the other relevant evidence to arrive at an ultimate residual functional capacity finding, the determination of disability is ultimately the prerogative of the ALJ—not the treating physician. See Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Here, the ALJ specifically addressed Dr. Tasker's opinions and gave good reasons for rejecting them. He relied on the opinions of non-examining state agency physicians who reviewed the record and concluded Plaintiff's physical impairments were not severe (Tr. 183, 248). These opinions both contradicted the opinion of Dr. Tasker. Under these circumstances I conclude it was unnecessary for the ALJ to order a consultative physical exam, because substantial evidence in the record supported his decision.

Conclusion

For the reasons stated herein, I conclude there is substantial evidence to support the conclusion of the ALJ and I therefore RECOMMEND the Commissioner's decision be AFFIRMED.

I further RECOMMEND defendant's Motion for Summary Judgment (Doc. 12) be GRANTED, and plaintiff's Motion for Summary Judgment (Doc. 8) be DENIED.[2]

                                                *s/William B. Mitchell Carter*
                                                UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).